**No. 26-30272**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

Keith E. Sonderling, Acting Secretary of Labor,
United States Department of Labor,

Plaintiff - Appellee

v.

Kelly Sills,

Defendant - Appellant

---

On Appeal from the United States District Court
for the Middle District of Louisiana, 3:23-CV-41

---

# RESPONSE BRIEF OF ACTING SECRETARY KEITH E. SONDERLING

---

JONATHAN BERRY
Solicitor of Labor

WAYNE R. BERRY
Associate Solicitor
for Plan Benefits Security

MEGAN E. GUENTHER
Deputy Associate Solicitor

EMMA L. GOOLD
MONICA W. HANRATTY
Attorneys

U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Rm N-4611
Washington, DC 20210
(202) 693-0270
Goold.Emma.L@dol.gov

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellant:** | **Counsel for Appellant:** |
|---|---|
| Kelly Defendant | *Pro se* |

| **Appellee:** | **Counsel for Appellee** |
|---|---|
| Acting Secretary Keith E. Sonderling | Jonathan Berry, Wayne R. Berry, Megan E. Guenther, Emma L. Goold, Monica W. Hanratty |

| **Other Interested Parties:** | **Counsel for Interested Parties:** |
|---|---|
| Coastal Bridge Company, LLC | |
| Participants and beneficiaries of the Coastal Bridge Company Health Plan | |

/s/ Emma L. Goold
EMMA L. GOOLD

Attorney of Record for Appellee
Secretary of Labor

## STATEMENT REGARDING ORAL ARGUMENT

Although the Acting Secretary will gladly participate in any oral argument scheduled by this Court, he does not believe that oral argument is necessary in this matter because the issues may be resolved based on the briefs submitted by the parties.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................... i

STATEMENT REGARDING ORAL ARGUMENT ..................... ii

TABLE OF CONTENTS ..................... iii

TABLE OF AUTHORITIES ..................... v

INTRODUCTION ..................... 1

JURISDICTIONAL STATEMENT ..................... 2

STATEMENT OF THE ISSUES ..................... 2

STATEMENT OF THE CASE ..................... 3

I. Statement of Facts ..................... 3

*A. The Coastal Bridge Company Employee Welfare Benefit Plan* ..................... 3

*B. Termination of the Plan* ..................... 4

*C. Defendant's Authority over Plan Assets* ..................... 5

*D. Coastal Bridge's Relationship with Nationwide Mutual Insurance Company* ..................... 7

II. Procedural Background ..................... 8

SUMMARY OF THE ARGUMENT ..................... 13

STANDARD OF REVIEW ..................... 15

ARGUMENT ..................... 17

I. The District Court correctly deemed admitted undisputed facts supported by record evidence under Local Rule 56 and then analyzed the application of law to those facts to grant summary judgment to the Secretary ....................................17

II. The record establishes Defendant's role as a functional fiduciary as a matter of law ..........................................................................................................21

III. The record supports the district court's calculation of damages ...............27

IV. The district court did not abuse its discretion by entering a permanent injunction ..........................................................................................................32

V. Denying relief under Rule 56(d) was a proper exercise of the district court's discretion ..........................................................................................33

VI. The district court did not abuse its discretion in denying Defendant's Rule 59(e) motion ..........................................................................................35

CONCLUSION ..........................................................................................37

CERTIFICATE OF SERVICE ..............................................................37

CERTIFICATE OF COMPLIANCE ......................................................39

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Am. Family Life Assurance Co. v. Biles*,
714 F.3d 887 (5th Cir. 2013)........................................................................ 34

*Bannistor v. Ullman*,
287 F.3d 394 (5th Cir. 2002)................................................................... 22, 32

*Beck v. Levering*,
947 F.2d 639 (2d Cir. 1991)......................................................................... 33

*Boudreaux v. Swift Transp. Co.*,
402 F.3d 536 (5th Cir. 2005)........................................................................ 16

*Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*,
No. 19-CV-2600, 2021 WL 3861762 (E.D.N.Y. Aug. 30, 2021) ....................... 23

*Carder v. Cont'l Airlines, Inc.*,
595 F. App'x 293 (5th Cir. 2014) .............................................................. 17, 34

*Carpenters Combined Fund, Inc. ex rel. Klein v. Lucci*,
No. CV 13-1287, 2017 WL 4023317 (W.D. Pa. Sept. 13, 2017)........................ 23

*Chao v. Johnson*,
No. CIV 03-5394, 2005 WL 2095109 (S.D. Tex. Aug. 30, 2005) ...................... 23

*Clark v. Am.'s Favorite Chicken Co.*,
110 F.3d 295 (5th Cir. 1997)........................................................................ 25

*Cooper v. Hewlett-Packard Co.*,
592 F.3d 645 (5th Cir. 2009)........................................................................ 15

*D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*,
88 F.4th 602 (5th Cir. 2023) ........................................................................ 22

*Edward H. Bohlin Co. v. Banning Co.*,
6 F.3d 350 (5th Cir. 1993)............................................................................ 35

*Eversley v. MBank Dallas*,
843 F.2d 172 (5th Cir. 1988)........................................................................ 20

*Green v. Life Ins. Co. of N. Am.*,
754 F.3d 324 (5th Cir. 2014)........................................................................ 15

*Hagar v. Fed. Bureau of Investigation*,
170 F.4th 946 (5th Cir. 2026) ................................................................ 17, 35

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
284 F. Supp. 2d 511 (S.D. Tex. 2003) ........................................................ 22

*Infusion Res. v. Minimed*,
351 F.3d 688 (5th Cir. 2003)........................................................................ 36

*John v. Louisiana Board of Trustees for State Colleges and Universities*,
757 F.2d 698 (5th Cir. 1985)........................................................................ 19

*Liedtke v. The City of Austin*,
-- F.4th --, No. 25-50717, 2026 WL 2225275 (5th Cir. Aug. 3, 2026) ......... 16, 17

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994)........................................................................ 16

*Martinez v. Schlumberger, Ltd.*,
338 F.3d 407 (5th Cir. 2003)........................................................................ 21

*Matthews v. Tidewater, Inc.*,
108 F.4th 361 (5th Cir. 2024) ...................................................................... 35

*Musmeci v. Schwegmann Giant Super Markets*,
159 F. Supp. 2d 329 (E.D. La. 2001) ........................................................... 25

*Naquin v. Elevating Boats, LLC*,
817 F.3d 235 (5th Cir. 2016)........................................................................ 36

*O'Reilly v. U.S. Army Corps of Eng'rs*,
477 F.3d 225 (5th Cir. 2007)........................................................................ 16

*Pegram v. Hedrich*,
530 U.S. 211 (2000) .......... 22

*Perez v. Bruister*,
823 F.3d 250 (5th Cir. 2016) .......... 21

*Perez v. Michelson Energy Co*.,
No. CV 15-00573, 2017 WL 11104210 (W.D. Tex. Jan. 13, 2017) .......... 24

*Reich v. Lancaster*,
55 F.3d 1034 (5th Cir. 1995) .......... 33

*RSR Corp. v. Int'l Ins. Co.*,
612 F.3d 851 (5th Cir. 2010) .......... 17

*Templet v. HydroChem Inc*.,
367 F.3d 473 (5th Cir. 2004) .......... 36

*Thorn v. McGary,*
684 F. App'x 430 (5th Cir. 2017) .......... 19

*Williams v. BP Expl. & Prod., Inc*.,
143 F.4th 593 (5th Cir. 2025) .......... 25

**Statutes**

28 U.S.C. § 1104(a)(1)(A)(i) .......... 31

28 U.S.C. § 1291 .......... 2

28 U.S.C. § 1331 .......... 2

28 U.S.C. §§ 1132(a)(2) and (a)(5) .......... 2

29 U.S.C. § 1002(21)(A)(i) .......... 21

**Rules**

Fed. R. Civ. P. 56(a) .......... 16, 17

Fed. R. Civ. P. 56(c)(1)(A) .................................................................... 17

Fed. R. Civ. P. 56(d) ........................................................................... 33, 34

Fed. R. Civ. P. 56(e)(2) ........................................................................ 18, 19

Fed. R. Civ. P. 59(e) ........................................................................... 35, 36

M.D. La. L.R. 56 ................................................................................ 19, 20

**Regulations**

29 C.F.R. § 2510.3–102(a)(1) ............................................................. 26

## INTRODUCTION

In 2019, scores of employees of Coastal Bridge Company, LLC, made contributions to the Coastal Bridge Company, LLC, employee welfare benefit plan (the "Plan") through payroll deductions. In the fall and winter of 2019, Defendant Kelly Sills ("Defendant"), who was owner and president of Coastal Bridge, deducted contributions for the Plan from employees' paychecks that he did not remit to the Plan. As a result, the Plan's insurers—Blue Cross Blue Shield of Louisiana ("BCBSLA"), Ameritas Life Insurance Corp., and Guardian Insurance—stopped processing and paying claims for the Plan. Unaware that their contributions were not being forwarded to the Plan, participants and beneficiaries continued to seek care under the Plan, only to have their claims denied for lack of coverage. As a result, employees suffered damages of more than $200,000 in unremitted Plan contributions and denied claims. Alleging that Coastal Bridge and Defendant violated multiple provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), the Acting Secretary of Labor ("Secretary") filed suit to recover losses on behalf of the Plan and enjoin Defendant from serving as an ERISA fiduciary in the future. The district court granted summary judgment for the Secretary, and this appeal followed.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the underlying action pursuant to 28 U.S.C. § 1331 because the Secretary's complaint alleged violations of ERISA pursuant to 28 U.S.C. §§ 1132(a)(2) and (a)(5). The district court entered judgment on April 1, 2026, and Defendant filed his notice of appeal on May 1, 2026. The district court denied Defendant's motion for reconsideration on May 29, 2026, and Defendant filed a supplemental notice of appeal of this denial that same day. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Did the district court properly deem admitted the Secretary's undisputed material facts submitted in support of his motion for summary judgment and analyze those facts to find that summary judgment was appropriate?
2. Was Defendant a functional fiduciary of the Plan?
3. Did the district court correctly determine the damages owed to the Plan?
4. Did the district court act within its discretion by permanently enjoining Defendant from acting as an ERISA fiduciary?
5. Was it within the district court's discretion to deny Defendant's motion for relief under Federal Rule of Civil Procedure 56(d)?
6. Did the district court act within its discretion in denying Defendant's motion for reconsideration under Rule 59(e)?

## STATEMENT OF THE CASE

### I. Statement of Facts

*A. The Coastal Bridge Company Employee Welfare Benefit Plan*

Coastal Bridge sponsored the Plan, an employee welfare benefit plan that offered various types of health insurance. As relevant here, the Plan offered fully insured dental and vision coverage through Ameritas Life Insurance Corp., *see* ROA.2450-51, 2620, and fully insured cancer, accident, and critical illness insurance through Guardian Insurance, *see* ROA.2455, 2623. The Plan's self-insured medical insurance was administered through BCBSLA. ROA.2332-33, 2444.

Employee contributions to the Plan were collected through payroll withholdings. ROA.2334 at ¶ 8, ROA.2561-62, 2566-2619. Coastal Bridge was responsible for transmitting the employee contributions to Ameritas, Guardian, and BCBSLA. ROA.2334 at ¶ 8, ROA.2513.

Coastal Bridge and BCBSLA entered into an Administrative Service Agreement (ASA) effective April 1, 2019. ROA.2461. Pursuant to the ASA, Coastal Bridge was the Plan sponsor and named fiduciary of the Plan. ROA.2487, 2495. Coastal Bridge was required to fund the group health plan. ROA.2494. Coastal Bridge opted to pay claims by check upon receipt of claims billing from BCBSLA. ROA.2470. The ASA was signed by Kelly Hernandez in her role as director of

human resources ("HR director") for Coastal Bridge.[1] ROA.2534. Pursuant to the ASA, Coastal Bridge retained all final authority and responsibility for the Plan. ROA.2495.

*B. Termination of the Plan*

The dental and vision insurance provided to the Plan by Ameritas terminated on August 31, 2019. ROA.2621 at ¶ 8, ROA.3571 at ¶ 8. No further employee contributions were remitted to Ameritas after that date. ROA.2621 at ¶ 9. Coastal Bridge continued to withhold employee contributions for those portions of the Plan through December 30, 2019. ROA.2561, 3571.

Guardian cancelled the Plan's cancer, accident, and critical illness coverage effective November 3, 2019, because it had not received payment of the premiums. ROA.2623 at ¶ 4. Coastal Bridge continued to withhold employee contributions for those portions of the Plan through December 30, 2019. ROA.2561, 3572 at ¶ 9.

Coastal Bridges also withheld $19,618.23 in employee contributions for health insurance from BCBSLA in December 2019 but did not pay invoices from the insurer. ROA.2335 at ¶ 13; ROA.2561.

Because Coastal Bridge failed to pay BCBSLA for processed claims, BCBSLA applied a claims pay hold to Coastal Bridge's account effective December 20, 2019. ROA.2717; *see also* ROA.2628. The balance due for these

[1] Kelly Hernandez later changed her name to Kelly Smith. ROA.2286 at 142:18–19.

claims, which BCBSLA had processed and paid, was $78,119.85. ROA.2715 at ¶ 3. Defendant paid this amount on May 4, 2020. ROA.2726.

On January 6, 2020, Defendant sent a letter to his insurance broker requesting to terminate the Plan's coverage with BCBSLA effective December 27, 2019. ROA.2565. He made no arrangement for BCBSLA to process and pay claims received after the cancellation for dates of service through December 27. ROA.2718, 2721-23. BCBSLA therefore did not process or pay these claims. ROA.2718. The total amount of outstanding unpaid BCBSLA claims is $172,351.35. ROA.2625, 2727-28.

*C. Defendant's Authority over Plan Assets*

Since at least 2017, Defendant was the president and sole owner of Coastal Bridge. ROA.2286 at 142:2-14. In that capacity, Defendant was the signatory to the company's bank account, with the authority to transfer funds to and from the account. ROA.2270 at 78:14-20, ROA.2334 at ¶ 9, ROA.2342 at ¶ 7. Defendant was in charge of payroll, and he had control over the deductions from employees' paychecks. ROA.2342-43 at ¶ 8. Though Coastal Bridge had a chief financial officer (CFO) who reported to Defendant, Defendant had the ultimate authority to determine whether and which of the company's invoices were paid. ROA.2286 at 144:17–24, ROA.2342 at ¶ 6. It was Defendant's decision when Coastal Bridge ultimately decided to retain the employee contributions and not to send them to its insurers.

ROA.2342 at ¶ 5. And when Coastal Bridge forwarded employee withholdings to the Plan's insurers, Defendant was the signatory on those checks. ROA.2334 at ¶ 9. Both the CFO and the HR director reported to Defendant, and they performed their duties at Defendant's direction and instruction. ROA.2286 at 142:15-23, ROA.2342 at ¶ 3.

In late January 2020, Kelly Smith, the former HR Director, now employed by another company, contacted Defendant asking for an update on payments to the Plan, as claims were starting to be returned unpaid. ROA.2394, 2399. Defendant eventually responded that "[N]ationwide took all receivables for [O]ctober[, N]ovember[,] and [De]cember[.]" ROA.2393. Smith responded, "I understand that, but most of these items were employee paid which means they were payroll deducted out of our paychecks. Where did that money go? Is there any expected date to when any of these items will be paid?" ROA.2392. Defendant replied, "But [I] am st[i]ll trying t[o] pay[.] [I] cannot say what day a[n]d time[.]" ROA.2392.

On February 28, 2020, BCBSLA sent a letter indicating that Coastal Bridge owed $78,119.85 for medical and prescription drug claims BCBSLA had already processed and paid before the termination date. ROA.2717. The letter also explained the claims pay hold was in place and BCBSLA had stopped paying claims effective December 20, 2019, because it had not received payment on the outstanding invoices. ROA.2717. Defendant signed a check to BCBSLA for

$78,119.85 on May 4, 2020. On May 12, Defendant reached out to BCBSLA to ask about the status of unpaid employee claims. He asked, "do [I] pay the employee bills from 12/19 or has [Bl]uecross paid[?]" ROA.2414.

*D. Coastal Bridge's Relationship with Nationwide Mutual Insurance Company*

Since 2016, Nationwide Mutual Insurance Company ("Nationwide") had a General Agreement of Indemnity with Coastal Bridge as part of an arrangement by which Nationwide provided the performance bonds for various Coastal Bridge construction contracts. ROA.2943-3004. The Agreement afforded Nationwide specified remedies if Coastal Bridge defaulted on a bonded contract. ROA.2945-46.

On December 16, 2019, Nationwide sent a letter to the Louisiana Department of Transportation and Development (DODT) advising that Coastal Bridge was in default of contracts with DODT for which Nationwide provided the bond. ROA.3095. The letter informed DODT that Nationwide was exercising its right of assignment under the General Agreement of Indemnity to have amounts due under the bonded contracts directed to Nationwide. ROA.3096. DODT then sent a letter to Coastal Bridge asking for its position on its projects and financial status. ROA.3119. Coastal Bridge did not immediately ratify Nationwide's position, indicating that negotiations were ongoing. *See* ROA.3093-94, 3092, 3089. Ultimately, however, whatever discussions were occurring between Coastal Bridge and Nationwide were resolved with the Consent and Release Agreement signed by Defendant on behalf of

the Company on January 13, 2020. ROA.2933-41, 3079. At that time, Defendant also sent letters regarding each of the projects bonded by Nationwide indicating Coastal Bridge's consent to Nationwide's declaration of its voluntary default and directing future payments on the contract be made to Nationwide. ROA.3006-26.

Neither the General Agreement of Indemnity nor the Consent and Release Agreement make any mention of the Plan.

## II. Procedural Background

The Secretary filed his Complaint in January 2023, naming as defendants Mr. Kelly Sills, his company Coastal Bridge Company, LLC, and the Coastal Bridge Company, LLC, Plan.[2] *See* ROA.17. Defendant actively evaded service for nearly nine months. *See* ROA.67-82, 106-117, 124-135 (describing the Secretary's extensive efforts to serve Defendant and his active evasion).

After Defendant was served and filed his answer, the parties submitted their joint Rule 26(f) report. ROA.156. Defendant's description of the claims attributed responsibility for harm to the Plan to Nationwide, BancorpSouth Insurance, and BCBSLA, among others. ROA.162-64.

The district court's scheduling order for the case, entered in April 2024, allowed almost a full year for discovery, with a deadline for completion of March 3,

[2] Coastal Bridge Company and the Plan were properly served and did not respond to the Secretary's complaint. The clerk entered default against them in June 2023. ROA.105.

2025. ROA.203. The Secretary served Defendant and Coastal Bridge with written discovery in April 2024. ROA.332. The Secretary agreed to multiple extensions of the deadline to respond, *see* ROA.330, 334, 347, before finally filing a motion to compel in August. ROA.273-74.

While the discovery period was ongoing, in December 2024, Defendant filed what he styled as a motion for exemption and release, arguing that he was not a fiduciary of the Plan and that Nationwide, BCBSLA, and misconduct by former employees were all to blame for the harm to the Plan. *See* ROA.455-58. The Secretary's motion for summary judgment was filed on May 28, 2025. ROA.2185-88. The deadline for Defendant to respond was July 7. ROA.204. During this period, Defendant made five responsive filings. First, on June 17, Defendant asked the court to defer ruling on the Secretary's motion for summary judgment pursuant to Rule 56(d) because, he represented, he had not had the opportunity to review his deposition transcript.[3] ROA.3180. On June 23, Defendant filed an opposition to the Secretary's motion for summary judgment. ROA.3342-48. On June 30, he filed a reply in support of his Rule 56(d) motion pertaining to his deposition. ROA.3349-51. On July 3, he filed a sur-reply in further opposition to summary judgment.

[3] The Secretary opposed this motion and provided proof that Defendant had been given the opportunity to review his deposition as required by Rule 30(e). *See* ROA.3182-84. The Secretary took Defendant's deposition on April 8, 2025, and the court reporting service sent Defendant a copy to read and sign on April 22, 2025. *See* ROA.3341. The Secretary also filed a copy of Defendant's deposition as an exhibit to his motion for summary judgment, so Defendant had a copy while preparing his opposition.

ROA.3363-66. And on July 14 he filed a supplemental defense in opposition to the summary judgment motion. ROA.3391-93. Five months later, in December 2025, Defendant filed what he styled as an "emergency opposition to summary judgment, rule 56(d) motion to defer, and objections to plaintiff's evidence," claiming for the very first time that he needed more time to obtain "[e]ssential evidence" held by Nationwide and BCBSLA, among others, that would "go[ ] directly to fiduciary control, plan-asset status, and loss." ROA.3544.

In March 2026, the district court granted summary judgment for the Secretary. ROA.3551-61. Because Defendant failed to submit a response to the Secretary's statement of uncontested material facts, the district court deemed those facts admitted. ROA.3555-56. Based on the record evidence, the district court determined that Defendant exercised actual control over Plan assets. ROA.3556. According to the district court, the record showed that Defendant oversaw all of Coastal Bridge's activities. He had authority to hire and fire Coastal Bridge employees, transfer funds to and from the company's bank account, and deduct employee contributions to the Plan from employees' paychecks. ROA.3556-57. Based on these facts established by the evidence, the district court concluded that Defendant was a functional fiduciary of the Plan under ERISA.

The district court found the record evidence further showed that Defendant, in his role as fiduciary, had failed to comply with ERISA by choosing not to forward

employee contributions to Plan providers, continuing to take deductions after coverage had been cancelled, and failing to make arrangements to pay valid claims. ROA3557-58. The court noted Defendant's payment to BCBSLA of $78,199.85 in May 2020 but found that the record showed that amount did not cover unprocessed and unpaid claims where the participant received services before December 27, 2019, but BCBSLA did not receive the claim until after Defendant had terminated coverage. ROA.3558-59. Thus, the evidence established as a matter of law that Defendant owed $209,466.34, plus interest. ROA.3558. Finally, the district court concluded that Nationwide's agreements with Coastal Bridge did not include any role in the Plan or coverage of expenses associated with the Plan. ROA.3559.

Despite Defendant's failure to comply with the procedural rules—for instance by filing five responses to the Secretary's motion for summary judgment without seeking permission from the court—the district court considered the merits of all the briefs and evidence submitted by Defendant and determined that he provided no admissible evidence and failed to substantively oppose the Secretary's motion. ROA.3559. In addressing Defendant's belated motion to conduct additional discovery, the district court noted Defendant's failure to take a single deposition or to take any action to obtain discovery in the year before filing his motion. ROA.3560. The court also emphasized Defendant's failure "to provide any affidavit or declaration" in support of his motion, as required by Rule 56(d). ROA.3556. The

district court granted summary judgment for the Secretary and directed the Secretary to advise if a hearing on damages was necessary or provide a proposed judgment. ROA.3561.

The Secretary argued that no hearing was necessary as to the amount of damages. *See* ROA.3562. The Secretary sought the same amount in principal damages—$209,466.34—the district court had found at summary judgment, plus pre and post judgment interest. ROA.3563. Defendant filed an objection to the proposed judgment containing the same arguments he made in opposition to summary judgment. ROA3582-85. He did not make any specific challenge to the Secretary's calculation of damages or offer any additional evidence. He asserted only that aspects of the damages were "disputed." ROA.3582.

The district court entered judgment on April 1, 2026, imposing, in addition to the principal losses to the Plan, pre and post judgment interest.[4] ROA.3590. The district court also permanently enjoined Defendant from violating ERISA and from acting as a fiduciary to any employee benefit plan covered by ERISA. *Id*.

The same day, Defendant filed a motion for reconsideration. ROA.3591. In his motion, Defendant objected to the district court's application of Local Rule 56 to deem admitted the Secretary's statement of material facts. ROA.3592. His motion,

[4] The court also entered a default judgment as to the company, Coastal Bridge, holding it jointly and severally liable for the full amount of the damages. ROA.3587-89.

however, simply restated the assertions considered and rejected by the court in ruling on the Secretary's motion for summary judgment. *See* ROA.3592-93. The district court therefore summarily denied the motion in a text-only order on the docket, noting that Defendant "failed to set for the requisite elements for reconsideration under Rule 59(e)" and instead "continues to present arguments already made and rejected by the Court in its prior Ruling." ROA.15. Defendant appeals both the judgment and the denial of his motion for reconsideration.

## SUMMARY OF THE ARGUMENT

This Court should affirm the grant of summary judgment for the Secretary. The district court properly applied Local Rule 56 to deem admitted facts stated by the Secretary to which Defendant failed to respond and correctly analyzed those facts to determine that summary judgment for the Secretary was warranted.

The Secretary submitted a statement of undisputed material facts along with his motion for summary judgement in which each fact is supported by citation to record evidence. In response, Defendant submitted numerous filings that contained only vague arguments and self-serving statements unsupported by any admissible evidence. While *pro se* litigants are afforded some leniency by the courts, they must still abide by federal and local procedural rules, including the requirement to support an opposition to summary judgment with evidence sufficient to generate a genuine dispute of material fact. Where a litigant fails to provide such evidence in response

to a motion for summary judgment, under Local Rule 56 and the summary judgment standard more generally, a court properly finds that there is no genuine issue of material fact and proceeds to analyze whether the facts provided by the movant warrant judgment in the movant's favor as a matter of law. That is precisely what the district court did here. Contrary to Defendant's arguments, the court deeming admitted the Secretary's statement of facts did not mean it granted summary judgment for the Secretary by default; the district court still assessed the Secretary's evidence and correctly determined that it amply supported judgment as a matter of law.

In particular, the district court properly determined that Defendant was a functional fiduciary of the Plan. The record shows that Defendant exercised authority and control over Plan assets in the form of unremitted employee contributions withheld from payroll: Defendant was the president of the company, had final say on which bills would be paid, and signed checks drawn on the company's account, including the checks that transmitted employee contributions to the insurers. While Defendant delegated some Plan-related tasks to his CFO and HR director, he had the authority to hire and fire these employees and direct their conduct.

The district court also properly entered judgment for $209,466.34 in damages. This amount includes contributions to the Plan withheld from employees' paychecks

but never remitted to the Plan, as well as the cost of claims that went unpaid when the Plan was terminated. Processed claims that Defendant subsequently paid in May 2020 were not included in the measure of damages, nor were expenses owed to BCBSLA or the other insurers rather than the Plan.

Given Defendant's violations of ERISA and the resulting damages, the district court acted within its discretion in permanently enjoining Defendant from acting as an ERISA fiduciary. It likewise appropriately exercised its discretion in refusing to defer ruling on the summary judgment motion and grant Defendant additional discovery under Rule 56(d) given Defendant's unexplained delay in requesting this relief, his failure to propound any discovery during the discovery period, and the lack of information about what facts he sought and how they would defeat the Secretary's motion for summary judgment. Finally, the district court acted within its discretion in denying Defendant's motion for reconsideration under Rule 59(e) because the motion simply reiterated the arguments offered in opposition to the Secretary's motion and rejected by the court in its ruling.

## STANDARD OF REVIEW

"Standard summary judgment rules control in ERISA cases." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (internal quotation marks omitted). The court reviews a "district court's grant of summary judgment de novo, applying the same standards as the district court." *Green v. Life Ins. Co. of N. Am.*,

754 F.3d 324, 329 (5th Cir. 2014). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant bears the burden of "informing the Court of the basis of its motion" and identifying portions of the record that "demonstrate the absence of a genuine issue of material fact." *Liedtke v. City of Austin*, -- F.4th --, No. 25-50717, 2026 WL 2225275, at *4 (5th Cir. Aug. 3, 2026). In turn, it is the nonmovant's burden to "identify specific facts in the record that show a genuine issue for trial." *Id*. (internal quotation marks omitted). The nonmovant's burden is not satisfied by merely casting "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir. 2005). In "*any* case" where "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant," summary judgment is appropriate. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis in original). The principles of judicial economy and fairness demand that the courts resolve cases involving an ultimately "meritless defense" on summary judgment. *Id*.

The decision to issue a permanent injunction is reviewed for abuse of discretion. *O'Reilly v. U.S. Army Corps of Eng'rs*, 477 F.3d 225, 238 (5th Cir. 2007). A decision to deny relief under Rule 56(d) is also reviewed for abuse of discretion

and will only be reversed if "arbitrary or clearly unreasonable." *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 296 (5th Cir. 2014) (per curiam). The same standard applies to the denial of a Rule 59(e) motion. *Hagar v. Fed. Bureau of Investigation*, 170 F.4th 946, 950 (5th Cir. 2026).

## ARGUMENT

### I. The District Court correctly deemed admitted undisputed facts supported by record evidence under Local Rule 56 and then analyzed the application of law to those facts to grant summary judgment to the Secretary

The district court applied the proper legal analysis in concluding that the undisputed facts presented by the Secretary were supported by record evidence and sufficient to entitle the Secretary to judgment as a matter of law. This Court should affirm the summary judgment for the Secretary based on the same analysis.

At summary judgment, the movant has the initial burden to demonstrate there is no genuine dispute as to any material fact with citations to supporting material in the record. Fed. R. Civ. P. 56(a), (c)(1)(A). To oppose the motion, the nonmoving party must establish, through supporting evidence, that there is a genuine dispute as to those facts. *Liedtke*, No. 25-50717, 2026 WL 2225275, at *4. "The court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *RSR Corp. v. Int'l Ins. Co.,* 612 F.3d 851, 857 (5th Cir. 2010) (internal citations omitted). If the nonmovant

fails to "properly address" the movant's assertion of fact, "the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

As the district court explained, the Secretary's motion was supported by a statement of uncontested material facts, in which each of the facts was supported by a citation to evidence in the record. *See* ROA.2189-2204. In responding to the motion, the Defendant failed to submit an opposing statement of facts addressing the material facts as presented by the Secretary. Despite this omission, the district court considered all the of the arguments and evidence Defendant presented. *See* ROA.3559. The court reviewed the documents Defendant submitted and properly determined that the contents of those documents did not support Defendant's argument. Rather, as the district court concluded, Defendant "provided no admissible evidence" and "failed to offer a single document that controverts any evidence submitted by" the Secretary. ROA.3559. As a result, the Defendant "failed to substantively oppose" the Secretary's motion for summary judgment, ROA.3559, and it was thus proper to deem admitted the undisputed material facts as stated by the Secretary. ROA.3556. After deeming the facts admitted, the district court also determined that the facts deemed admitted were supported by record evidence. *See* ROA.3556-59 (enumerating "Facts Deemed Admitted *and Supported by Record Evidence*") (emphasis added). Thus, despite Defendant's lack of relevant evidence in opposition to the Secretary's motion, the district court still assessed whether the

facts put forward by the Secretary were adequately supported by record evidence and whether the Secretary had met his burden for judgment as a matter of law.

It was proper for the district court to deem admitted the Secretary's statement of uncontested material facts under Middle District of Louisiana Local Rule 56. Pursuant to Local Rule 56(b), a motion for summary judgment in the Middle District of Louisiana must be supported by a statement of material facts. The party opposing the motion must then submit an opposing statement of material facts designating each of the movant's statements of fact as "admitted," "denied," or "qualified." L.R. 56(c). Under Local Rule 56(f), statements of fact that are not controverted are deemed admitted so long as they are supported by a citation to record evidence. In *Thorn v. McGary*, the Fifth Circuit affirmed the application of an identical local rule in the Eastern District of Louisiana even as to a *pro se* nonmovant, holding that a *pro se* litigant is "not excused from complying with the Federal Rules of Civil Procedure, the district court's local rules, or most significantly, the tenet that he must identify evidence in support of his claims." 684 F. App'x 430, 432–33 (5th Cir. 2017) (per curiam). This local rule is simply a tool to assist the court in applying the summary judgment standard.

Defendant's reliance on *John v. Louisiana Board of Trustees for State Colleges and Universities*, 757 F.2d 698 (5th Cir. 1985) to argue that the district court erred by granting summary judgment by default, is therefore misplaced. In

*John*, the district court granted summary judgment for the defendants simply because the plaintiff did not file a brief in response to defendants' motion. *Id.* at 702. The Fifth Circuit reversed, holding that this interpretation of the local rule setting out requirements for responding to motions for summary judgment was inconsistent with Federal Rule 56, which places on the movant the initial burden of showing no genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 708. The district court therefore could not grant summary judgment for the defendants without assessing the sufficiency of their evidence, independent of the plaintiff's failure to respond. *Id.* at 709. Here, in contrast, the local rule simply allowed the Court to treat uncontested facts as admitted so long as they were properly supported by record evidence, which is entirely consistent with Federal Rule 56(e)(2).

In fact, the district court did exactly what the Fifth Circuit affirmed in *Eversley v. MBank Dallas*, holding summary judgment for the defendant was appropriate even though the plaintiff had not opposed the motion because the district court did not treat this as a "default[]" but rather determined that the defendant's filings "made a *prima facie* showing of its entitlement to judgment." 843 F.2d 172, 174 (5th Cir. 1988). Because Defendant failed to comply with Local Rule 56(c), the district court properly deemed admitted the Secretary's statement of material facts, consistent with Local Rule 56(f) and Federal Rule 56(e)(2). And because the district court also

independently assessed the record and determined that the Secretary had met his burden, it properly granted the motion for summary judgment. This court should likewise affirm the grant of summary judgment for the Secretary.

## II. The record establishes Defendant's role as a functional fiduciary as a matter of law

Defendant challenges the sufficiency of the evidence to establish his role as a functional fiduciary of the Plan as a matter of law. But the record amply supports the conclusion that Defendant was a fiduciary as a matter of law. The undisputed facts show that Defendant exercised authority and control over the Plan's assets. Accordingly, the district court correctly concluded that Defendant was a fiduciary of the Plan.

The question of whether the defendant was acting as a fiduciary is a "threshold" inquiry in an ERISA case. *Martinez v. Schlumberger, Ltd*., 338 F.3d 407, 413 (5th Cir. 2003). ERISA fiduciary status attaches to both a "named fiduciary" under the terms of the plan documents and a "functional fiduciary," who exercises authority, control, or responsibility over the plan. *Perez v. Bruister*, 823 F.3d 250, 259 (5th Cir. 2016). Specifically, one is a "functional fiduciary" of a plan "to the extent" that he "exercises any authority or control respecting management or disposition of [the plan's] assets." 29 U.S.C. § 1002(21)(A)(i). "[A]ny" modicum of "control" over the plan's assets, regardless of whether it is "discretionary," is sufficient to render a person a "functional fiduciary." *Id*. The statute's "[e]xpansive

[d]efinition" of fiduciary status as to the plan's "assets" has "roots in the fiduciary's traditional duties" at common law, which were especially concerned with "financial decisions" concerning "assets." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 543, 545 (S.D. Tex. 2003) (citing *Pegram v. Hedrich,* 530 U.S. 211, 231–232 (2000)). A "liberal construction" of fiduciary status also is "in keeping with the remedial purpose of ERISA." *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.,* 88 F.4th 602, 608 (5th Cir. 2023).

Plan assets include "amounts that a participant has withheld from his wages by an employer, for contribution . . . to the plan, as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102(a)(1). Such employee contributions are plan assets "even though the contributions have not actually been delivered to the benefit plan." *Bannistor v. Ullman*, 287 F.3d 394, 402 (5th Cir. 2002).

There is no genuine dispute that Coastal Bridge deducted money from its employees' weekly paychecks to pay for their Plan coverage. ROA.2334 at ¶ 8, ROA.2561-62, 2566-2619, ROA.2257 at 27:18–20, 29:4–9, ROA.2262 at 47:22–25, 48:1–5, 49:11–16. Those deductions became Plan assets on the date they were set aside from wages and identified as employee contributions to the Plan, even if they were not properly remitted to the Plan.

Defendant exercised authority and control over these Plan assets and was therefore a functional fiduciary of the Plan. It is undisputed that Defendant was the president and sole owner of Coastal Bridge during the relevant period. ROA.2286 at 143:6–7, ROA.2332. Courts have routinely held that the president and owner of a closely held organization is a "functional fiduciary," based on this person's obvious and pervasive control over the finances of the organization. *See Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*, No. 19-CV-2600, 2021 WL 3861762 (E.D.N.Y. Aug. 30, 2021) ("Courts have held that sole owners who are also corporate presidents are fiduciaries under the functional test.") (collecting citations). The record further establishes that Defendant was the "ultimate decision-maker concerning what bills were paid, and what bills were set aside and ignored." ROA.2342 at ¶ 6; *see also* ROA.2286 at 144:17–24 (Defendant acknowledging he had the authority as owner of the company to direct the CFO as to which invoices should be paid or not paid). In that capacity, Defendant was the signatory to the Company's bank account, with the authority to transfer funds to and from the account. ROA.2270 at 78:14–20, ROA.2334 at ¶ 9, ROA.2342 at ¶ 7. This fact alone is sufficient to create fiduciary status. *See Chao v. Johnson*, No. CIV 03-5394, 2005 WL 2095109, at *4 (S.D. Tex. Aug. 30, 2005) (holding that a company's CEO was a fiduciary because he was "authorized to sign checks" and "made decisions approving expenditures and finances"). *See also Carpenters Combined Fund, Inc.*

*ex rel. Klein v. Lucci*, No. CV 13-1287, 2017 WL 4023317, at *10 (W.D. Pa. Sept. 13, 2017) ("[C]heck writing authority will suffice under ERISA to create fiduciary status.").

Defendant exercised authority and control over the specific assets that gave rise to his ERISA liability. The Secretary's evidence shows that Defendant was in charge of payroll, and he had control over the deductions on employees' paychecks. ROA.2342-43 at ¶ 8. It was also Defendant's decision when Coastal Bridge ultimately decided to retain the employee contributions and not to send them to its insurers. ROA.2342 at ¶ 5. And when Coastal Bridge forwarded employee withholdings to its insurers, Defendant was the signatory on those checks. ROA.2334 at ¶ 9. Defendant's authority over the withholding and remittance of employee contributions renders Defendant a fiduciary of the Plan. *See Perez v. Michelson Energy Co*., No. CV 15-00573, 2017 WL 11104210, at *4 (W.D. Tex. Jan. 13, 2017) (holding that a person who was responsible for "authorizing the withholding and remittance of employee contributions" was individually liable as a fiduciary ), *report and recommendation adopted*, No. 15-CV-573, 2017 WL 11105228 (W.D. Tex. Feb. 1, 2017).

Defendant's assertion that he did not "personally" handle these tasks and delegated these functions to the company's CFO is insufficient to create a dispute of material fact. *See* Appellant's Br. at 17. As the president and sole owner, Defendant

had the power to hire, fire, and promote anyone at Coastal Bridge, including the CFO and the HR director. ROA.2286 at 143:16–17. These individuals reported to Defendant and performed their duties at Defendant's direction and instruction. ROA.2286 at 142:15–23, ROA.2342 at ¶ 3. Defendant's unsupported, self-serving statements to the contrary are insufficient to create a genuine dispute of material fact. *See, e.g.*, *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported allegations or . . . deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."); *Williams v. BP Expl. & Prod., Inc.*, 143 F.4th 593, 602 (5th Cir. 2025) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."). Defendant is liable as the head of the company, even if he merely directed the administration of the Plan and delegated the implementation to his subordinates. *See, e.g.*, *Musmeci v. Schwegmann Giant Super Markets,* 159 F. Supp. 2d 329, 337 (E.D. La. 2001) (holding that the CEO was individually liable as a fiduciary based on his "discretion and direct control," even though his HR director actually "performed the ministerial aspects" of the plan). At most, Defendant's argument is that his CFO is *also* a fiduciary. However, it does not allow Defendant to escape his own fiduciary duties.

Defendant's reliance on the fact that Coastal Bridge's HR Director, Kelly Smith, née Hernandez, signed the ASA with BCBSLA on behalf of Coastal Bridge is unpersuasive for the same reason. *See* Appellants Br. at 17–18. Given Defendant's role and his authority over Smith, his decision to delegate particular Plan-related tasks to her is insufficient to create a genuine dispute as to his fiduciary status. Moreover, the record evidence belies Defendant's characterization that she "handled" the Plan's operations without his involvement during the relevant period. After Smith left Coastal Bridge, she contacted Defendant multiple times to ask about the status of Plan coverage for November and December 2019 because she and other former employees had begun receiving bills for unpaid claims. ROA.2399, 2394. Smith reminded Defendant that the premiums for Plan coverage "were employee paid which means they were payroll deducted out of our paychecks. Where did that money go?" ROA.2392. Defendant replied, "[I] am st[i]ll trying t[o] pay[.] [I] cannot say what day a[n]d time[.]" ROA.2392. These emails show that Defendant had the ultimate responsibility for transmitting employee contributions to the Plan's insurers. As such, the record supports that Defendant was a fiduciary to the Plan as a matter of law.

## III. The record supports the district court's calculation of damages

The district court correctly found that Defendant owes $209,466.34 to the Plan for unremitted employee contributions and unpaid claims.[5] Defendant claims that a "transparent tracing" was needed to justify that number, Appellant's Br. at 20, but the record clearly establishes each component of the damages as a matter of law.

For each type of insurance available under the Plan, employees made contributions through payroll deductions that were not remitted to the Plan. Dental and vision insurance from Ameritas was terminated August 31, 2019. ROA.2621 at ¶ 8. Ameritas did not receive any payments from Coastal Bridge between September 1 and December 27, 2019. ROA.2621 at ¶ 9. Coastal Bridge's payroll records, however, established that during this period, the company withheld employee contributions of $7,022.72 for dental insurance and $2,713.87 for vision insurance. ROA.2334-35 at ¶ 10; ROA.2561. Guardian did not receive any payments for the Plan's cancer, accident, and critical illness insurance in November and December 2019. ROA.2623 at ¶ 4. But Coastal Bridges withheld from employee paychecks $2,692.66 in contributions for cancer insurance, $2,840.16 in contributions for accident insurance, and $2,227.35 in contributions for critical illness insurance. ROA.2335 at ¶ 11; ROA.2561. Coastal Bridges also withheld $19,618.23 in

[5] The judgment also imposes pre and post judgment interest. *See* ROA.3590. Defendant does not challenge this aspect of the damages award on appeal.

employee contributions for health insurance from BCBSLA in December 2019 but did not pay invoices from the insurer. ROA.2335 at ¶ 13; ROA.2561. Defendant admits he has no reason to doubt the accuracy of these figures and no basis to contradict them. ROA.2262 at 49:11–25.

Additionally, BCBSLA denied $172,351.35 in claims after Coastal Bridge failed to pay processed claims timely as required by the ASA. ROA.2625 at ¶ 5. Defendant's production indicated the same amount in unpaid BCBSLA claims. ROA.388-89. When asked about this document at deposition, Defendant claimed that he had already paid some of the people listed but admitted he had no evidence of such payments. ROA.2284 at 134:15–25. Thus, there is no genuine dispute of the amounts owed to the Plan as found by the district court.

Defendant asserts that he should have been credited for a payment of $78,119.85 he made to BCBSLA in May 2020. That payment was for medical and prescription drug claims that had been processed and paid by BCBSLA before Coastal Bridge terminated the coverage. ROA.2715 at ¶ 3; *see also* ROA.2717. Those claims are not included in the amount of *unpaid* claims sought by the Secretary.[6]

---

[6] The February 28, 2020, letter from BCBSLA that requested payment of the outstanding claims balance of $78,119.85 also indicated Defendant and Coastal Bridge owed $12,355.23 in administrative fees. ROA.2717. That amount is not included in the damages calculation because it was owed to BCBSLA, not to the Plan.

Defendant also claims the Secretary has not shown these damages "result from" his fiduciary breach. He suggests they are instead the result of Nationwide's involvement with Coastal Bridge pursuant to the General Agreement of Indemnity or the Consent and Release Agreement between the parties. But these documents have no bearing on Defendant's fiduciary obligations to the Plan or his liability for damages.

Nationwide issued performance and payment bonds and acted as surety for Coastal Bridge for various construction contracts. ROA.2969-3004. To secure these bonds, Coastal Bridge entered into a General Agreement of Indemnity with Nationwide and subsequent amendments that assigned rights in the construction contracts to Nationwide to secure the bonds and granted Nationwide the right to certain remedies if Coastal Bridge defaulted on any of the bonded contracts. *See* ROA.2943-68. In December 2019, Nationwide determined that Coastal Bridge was in default of construction contracts bonded by Nationwide. ROA.3354. To formalize the resolution of these issues, Coastal Bridge and Nationwide entered into a consent and release agreement dated January 13, 2020. ROA.2933-41. Neither of these agreements have any relevance to Defendant's fiduciary obligations to the Plan. Rather, they lay out the terms under which Nationwide provided performance bonds for Coastal Bridge's construction contracts.

Furthermore, Defendant did not behave at the time as if he believed his agreement with Nationwide had any bearing on preexisting obligations to the Plan. In response to inquiries in January and February 2020 about the status of Plan benefits in November and December 2019 from the former HR Director who had started receiving bills from medical providers, Defendant responded that "[N]ationwide took all rec[ei]vables for [O]ctober[,] [N]ovember[,] and [De]cember." ROA.2393. In response, Smith pointed out, "I understand that, but most of these items were employee paid which means they were payroll deducted out of our paychecks. Where did that money go? Is there any expected date to when any of these items will be paid?" ROA.2392. Defendant responded "[I] am st[i]ll trying t[o] pay [I] cannot say what day a[n]d time." ROA.2392. In other words, in February 2020, Defendant did not give any indication that Nationwide had taken on obligations to the Plan or that he expected Nationwide to pay what was owing. Similarly, in May 2020 Defendant reached out to BCBSLA to confirm that he had made a payment and to ask whether he needed to pay "the employee bills from 12/19." ROA.2414-15. He did not ask whether Nationwide had been in touch to resolve outstanding employee claims or suggest that BCBSLA should contact Nationwide to resolve the issue.

In his brief, Defendant invokes letters sent by Nationwide on December 16, 2019, and by an attorney for Coastal Bridges on December 26, 2019, as evidence of

a "factual dispute about financial control and causation during the critical period." Appellant's Br. at 9. Again, nothing in the agreements between Nationwide and Coastal Bridge suggested any responsibility by Nationwide to the Plan, so the exact date Nationwide exercised its rights under the General Agreement in case of Coastal Bridge's default is immaterial to the damages Defendant owes the Plan. But even if Nationwide and Coastal Bridge had a dispute about who controlled the company in December 2019, that dispute was resolved by January 13, 2020, again without reference to Nationwide having any obligations to the Plan or Coastal Bridge employees at all. On January 13, 2020, Nationwide and Coastal Bridge executed the Consent and Release Agreement, and Coastal Bridge sent letters, signed by Defendant, regarding each of the projects over which Nationwide had assumed responsibility confirming that "Nationwide had the authority to declare voluntary defaults on behalf of Coastal Bridge" and directing that "all contract payments . . . due to Coastal bridge in connection with the following projects be made payable to Nationwide." ROA.3006-3026. If the dispute had been resolved such that Nationwide took on Defendant's obligations to the Plan, that would be indicated in the agreement. But as discussed above there is nothing in the Consent and Release Agreement to suggest that Nationwide assumed obligations to the Plan that accrued before the effective date of the agreement, so there is no genuine dispute about the

relevance of Nationwide's involvement as surety for Coastal Bridge's construction bonds.

Defendant's brief also references "genuine disputes concerning causation and practical ability to pay." Appellant's Br. at 9. But these are irrelevant to the material issues. An ERISA fiduciary must act "for the *exclusive purpose* of providing benefits to participants and their beneficiaries." 28 U.S.C. § 1104(a)(1)(A)(i). The Plan sponsor's insolvency is not a defense to the breach of this obligation. *See Bannistor*, 287 F.3d 394 (affirming finding of ERISA violation where participant contributions to an employee benefit plan were not forwarded because of the debtor plan sponsor's insolvency and its arrangement that all accounts receivable were first deposited with a lender). Coastal Bridge's financial condition and its financial obligation to Nationwide are not a defense to Defendant's breach of his fiduciary obligations to the Plan. Coastal Bridge, and Defendant as a Plan fiduciary, still had the obligation to remit employee contributions to the Plan and must now reimburse those contributions to the Plan, with interest, and pay the Plan benefits that were denied because of the failure to remit those contributions.

## IV. The district court did not abuse its discretion by entering a permanent injunction

Given the breaches established as a matter of law and the magnitude of the damages, the district court acted within its discretion by permanently enjoining Defendant from acting as an ERISA fiduciary. The Fifth Circuit has held that

"ERISA imposes a high standard on fiduciaries, and serious misconduct that violates statutory obligations is sufficient grounds for a permanent injunction." *Reich v. Lancaster*, 55 F.3d 1034, 1054 (5th Cir. 1995) (*quoting Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991) (per curiam)). A district court does not abuse its discretion by entering a permanent injunction where the facts establish that the defendant has "committed significant violations of their ERISA fiduciary duties." *Id.*

Here, the record establishes that Defendant, as a fiduciary of the Plan, committed multiple violations of ERISA. The district court found that the violations described above—Defendant's failure to remit Plan deductions taken from employees' paychecks, his choice to instead use those funds for the benefit of the company, and his decision to cancel the Plan without notice to employees and without making arrangements for the payment of valid claims—violated multiple sections of ERISA, including sections 403(c)(1), 404(a)(1)(A) and (B), and 406(a)(1)(D), (b)(1), and (b)(2). In light of the evidence before it of Defendant's numerous and serious violations of ERISA, the district court did not abuse its discretion by permanently enjoining him from acting as an ERISA fiduciary.

## V. Denying relief under Rule 56(d) was a proper exercise of the district court's discretion

Defendant failed to meet the requirements for relief under Rule 56(d), so the district court did not abuse its discretion in denying his motion. Rule 56(d) gives the district court discretion to grant relief to a nonmovant facing a motion for summary

judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The Fifth Circuit has emphasized that the party seeking relief under Rule 56(d) must "show how the additional discovery will defeat the summary judgment motion, and this showing may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Carder*, 595 F. App'x at 296 (cleaned up and internal quotation marks omitted); *see also Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (per curiam) ("[T]he non-moving party must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.") (internal quotation marks omitted).

Defendant's "emergency opposition to summary judgment, Rule 56(d) motion to defer, and objections to plaintiff's evidence," filed in December 2025, falls far short of this standard, and the district court did not abuse its discretion in denying it. First, the motion was not accompanied by affidavit or declaration. Second, the motion made only vague allusions to the facts that additional discovery would provide, asserting that "essential evidence" is held by third parties that "goes directly to fiduciary control, plan-asset status, and loss." ROA.3544. It offered no specifics of how the requested discovery would help Defendant defeat the Secretary's

summary judgment motion or why such discovery could not have been sought earlier.[7] Thus, the court acted well within its discretion in denying the motion.

### VI. The district court did not abuse its discretion in denying Defendant's Rule 59(e) motion

Finally, Defendant also appeals the district court's denial of his motion for reconsideration, filed after the judgment was entered. On appeal, the district court's decision to deny a Rule 59(e) motion is reviewed for abuse of discretion. *Hagar*, 170 F.4th at 950. The district court's discretion in deciding whether to reconsider its judgment is "considerable." *Edward H. Bohlin Co. v. Banning Co*., 6 F.3d 350, 355 (5th Cir. 1993). Reconsideration under Rule 59(e) is "for the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence" and is not "for raising arguments 'which could, and should, have been made before the judgment issued.'" *Vuoncino v. Forterra, Inc*., 140 F.4th 200, 212 (5th Cir. 2025). Moreover, motions to reconsider implicate the judiciary's interest in "finality." *Bohlin Co*., 6 F.3d at 355. As a consequence, this circuit has recognized that reconsideration is an "extraordinary remedy" which should be granted only "sparingly." *Matthews v. Tidewater, Inc*., 108 F.4th 361, 371 (5th Cir. 2024).

[7] Defendant has never explained why he could not file his motion until December 2025. Defendant had made similarly vague arguments invoking the responsibility of Nationwide and other third parties as early as February 2024, *see* ROA.162-63 but during the eleven-month discovery period, he did not issue a single subpoena or take a single deposition. He also filed five prior briefs in opposition to the Secretary's motion for summary judgment in June and July 2025 that made no mention of his need for additional discovery. ROA.3180, 3342-48, 3349-51, 3363-66, 3391-93.

Here, Defendant's showing does not come close to the high threshold that is required to overturn a denial of a Rule 59(e) motion. In his motion, Defendant argued that the district court erred by deeming admitted the Secretary's uncontested statement of material facts, asserting that he had introduced into the record exhibits and declarations that demonstrated genuine issues of material fact. His arguments regarding these purported disputes of fact, however, were the very same arguments he made in his numerous previous filings, and now makes on appeal: namely, his supposed lack of control over Plan assets and the significance of Nationwide's control over receivables. To the extent Defendant argues that he needs additional time to uncover records from Nationwide, there is no reason that Defendant could not have uncovered this evidence earlier if he had exercised "proper diligence." *Infusion Res. v. Minimed*, 351 F.3d 688, 696–97 (5th Cir. 2003). Moreover, every point made in Defendant's motion was already considered and rejected by the district court in its ruling on summary judgment. *See* ROA.3559. It is well settled in the Fifth Circuit that a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc*., 367 F.3d 473, 479 (5th Cir. 2004); *see also Naquin v. Elevating Boats, LLC,* 817 F.3d 235, 240 n.4 (5th Cir. 2016). Defendant's motion ran afoul of these rules, and the district court was well within its discretion to deny it.

## CONCLUSION

For these reasons, the Secretary respectfully requests this court affirm the judgment of the district court.

Respectfully submitted,

JONATHAN BERRY
Solicitor of Labor

WAYNE R. BERRY
Associate Solicitor
for Plan Benefits Security

MEGAN E. GUENTHER
Deputy Associate Solicitor

/s/ Emma L. Goold
EMMA L. GOOLD
MONICA W. HANRATTY
Attorneys

U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Rm N-4611
Washington, DC 20210
(202) 693-0270
Goold.Emma.L@dol.gov

## CERTIFICATE OF SERVICE

I certify that on September 3, 2026, the foregoing document was forwarded via email and U.S. Mail to the following parties:

Kelly C. Sills
6080 Chandler Dr.
Baton Rouge, LA 70808
sillsk@coastalbridge.com

/s/ Emma L. Goold
EMMA L. GOOLD
Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Rm N-4611
Washington, DC 20210
(202) 693-0270
Goold.Emma.L@dol.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a) and Fifth Circuit Rule 32, the undersigned certifies that this brief complies with the applicable type volume limitation, typeface requirements, and type-style requirements.

1. This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,553 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Appellate Rule 32(f) and 5th Circuit Rule 32.1.
2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and 5th Circuit Rule 32.1 and the type-style requirements of Federal Appellate Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Emma L. Goold
EMMA L. GOOLD
Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Rm N-4611
Washington, DC 20210
(202) 693-0270
Goold.Emma.L@dol.gov