U S COURT OF APPEALS
RECEIVED
SEP 16 2026
FIFTH CIRCUIT

No. 26-30272
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

KEITH E. SONDERLING, Acting Secretary of Labor,
United States Department of Labor,
*Plaintiff-Appellee,*
v.
KELLY C. SILLS,
*Defendant-Appellant,*
and
COASTAL BRIDGE COMPANY, LLC and COASTAL BRIDGE LLC HEALTH PLAN,
*Defendants.*

---

On Appeal from the United States District Court
for the Middle District of Louisiana
Civil Action No. 3:23-cv-00041-SDD-SDJ

REPLY BRIEF OF DEFENDANT-APPELLANT KELLY C. SILLS

Kelly C. Sills, Pro Se
6080 Chandler Drive
Baton Rouge, Louisiana 70808
Telephone: 225-766-0244
Email: sillsk@coastalbridge.com

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned, appearing pro se, certifies that the following persons and entities known to him have an interest in the outcome of this appeal under Fifth Circuit Rule 28.2.1: Kelly C. Sills; Coastal Bridge Company, LLC; Coastal Bridge LLC Health Plan and its participants and beneficiaries; Nationwide Mutual Insurance Company; Blue Cross and Blue Shield of Louisiana; BXS Insurance/Cadence Insurance; Coastal Contractors, Inc.; and Devon Overall, Jr. The governmental plaintiff is the Acting Secretary of Labor, United States Department of Labor. Current and former counsel of record include Jonathan Berry, Wayne R. Berry, Megan E. Guenther, Emma L. Goold, Monica W. Hanratty, Matthew P. Sallusti, Davis Rhorer, Jr., Sheryl L. Vieyra, John Rainwater, Ronald C. Gathe, Jr., and Mary K. Cobb.

Kelly C. Sills, Pro Se Defendant-Appellant

## TABLE OF CONTENTS

Certificate of Interested Persons .......... 2
Table of Authorities .......... 4
Introduction .......... 5
I. Conflicts in the Secretary's own evidence .......... 7
II. Actual exercise of authority or control .......... 11
III. Validity of the claimed losses .......... 14
IV. DOTD specifications, Nationwide, and causation .......... 21
V. The permanent injunction .......... 26
VI. Rules 56(d) and 59(e) .......... 27
Conclusion .......... 28
Certificate of Service .......... 30
Certificate of Compliance .......... 31

# TABLE OF AUTHORITIES

## Cases


Bannistor v. Ullman, 287 F.3d 394 (5th Cir. 2002) .......... 24

Bruckner Truck Sales, Inc. v. Guzman, No. 24-10377 (5th Cir. Aug. 6, 2025) .......... 27, 28

D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Insurance Co., 88 F.4th 602 (5th Cir. 2023) .......... 11

Eversley v. MBank Dallas, 843 F.2d 172 (5th Cir. 1988) .......... 7

Guzman v. Allstate Assurance Co., 18 F.4th 157 (5th Cir. 2021) .......... 5, 10

In re Carney, 258 F.3d 415 (5th Cir. 2001) .......... 9

John v. Louisiana Board of Trustees for State Colleges & Universities, 757 F.2d 698 (5th Cir. 1985) .......... 7

Liedtke v. City of Austin, No. 25-50717 (5th Cir. Aug. 3, 2026) .......... 5, 10

LoPresti v. Terwilliger, 126 F.3d 34 (2d Cir. 1997) .......... 12, 13

Pegram v. Herdrich, 530 U.S. 211 (2000) .......... 11

Perez v. Bruister, 823 F.3d 250 (5th Cir. 2016) .......... 15

RSR Corp. v. International Insurance Co., 612 F.3d 851 (5th Cir. 2010) .......... 7

Tiblier v. Dlabal, 743 F.3d 1004 (5th Cir. 2014) .......... 11


## Rules and Statutes


29 U.S.C. § 1002(21)(A) .......... 11, 13

29 U.S.C. § 1109(a) .......... 15

Fed. R. Civ. P. 36 .......... 9

Fed. R. Civ. P. 56 .......... 5, 7, 27, 28

Fed. R. Civ. P. 56(d) .......... 27

Fed. R. Civ. P. 59(e) .......... 27, 28


## Other Record Materials


Louisiana Standard Specifications for Roads and Bridges (2006), Section 109.04(3)(a), ROA.480-481 .......... 22, 23

## INTRODUCTION

The Secretary's response confirms the central Rule 56 problem in this appeal: it asks this Court to treat disputed evidence as undisputed. The Secretary relies primarily on Michael Giambrone's affidavit to say that Sills personally controlled payroll, selected which invoices would be paid, chose not to remit employee contributions, and thereby caused every claimed loss. Appellee Br. 23–26. But the Secretary itself filed Sills's sworn deposition as a summary-judgment exhibit, and that deposition specifically contradicts those assertions. Sills testified that Giambrone's assertion that he managed finances at Sills's instruction was "not true"; that Sills did not decide not to pay the health invoices; and that Devon Overall and Michael Giambrone—not Sills—decided what bills to pay. ROA.2272. Sills likewise specifically denied that he knew how to operate or stop payroll deductions and testified that Giambrone handled payroll funding. ROA.2273.

That conflict matters because the Secretary bore the burden as the summary-judgment movant and because this Court reviews the judgment de novo. The Secretary's own newly cited authority, Liedtke v. City of Austin, reiterates that courts must view facts and reasonable inferences for the nonmovant and "may not make credibility determinations or weigh competing evidence." No. 25-50717, slip op. at 7–8 (5th Cir. Aug. 3, 2026). Guzman v. Allstate Assurance Co. likewise holds that particularized, personal-knowledge deposition testimony does not cease

to be competent summary-judgment evidence merely because it is self-serving or lacks independent corroboration. 18 F.4th 157, 160–61 (5th Cir. 2021).

The damages dispute likewise requires attention to the actual evidence. The Secretary supports the $172,351.35 denied-claims component with Dale Webb's declaration and carrier records. ROA.2625. But Sills's production included a marked version of the participant schedule, and his deposition describes payments he says he personally made, including approximately $10,000 to Michael Guidry and an arrangement resolving Sean Maher's claim. ROA.388–389, 2283–2284. Those firsthand assertions must be distinguished from Sills's reports of what other participants told him, which present separate admissibility questions.

The carrier records also support a concrete accounting dispute. BCBSLA demanded $78,119.85 and stated that payment in full would permit claims payments to resume under the Agreement; Coastal paid that exact amount. ROA.2752–2754. Sills then asked BCBSLA how it had accounted for a separate deposit. ROA.2415. Those records support his stated purpose for paying and require distinguishing reimbursement, deposits, administrative fees, and unpaid participant claims. Section I addresses the procedural limits governing consideration of that evidence. Sills seeks reversal if the properly considered record establishes his entitlement to judgment, or vacatur and remand where material disputes remain.

# I. THE SECRETARY'S OWN EVIDENCE CONTAINS MATERIAL FACTUAL CONFLICTS THAT RULE 56 DID NOT PERMIT THE DISTRICT COURT TO RESOLVE

The Secretary correctly invokes Middle District Local Rule 56 and the nonmovant's obligation to identify specific evidence. Appellee Br. 17–21. Rule 56(c)(3) requires consideration of cited materials and permits consideration of other record materials; it does not impose a duty to search an entire deposition. RSR Corp. v. International Insurance Co., 612 F.3d 851, 857 (5th Cir. 2010). Sills's pro se status did not excuse compliance. But failure to respond in the prescribed form does not automatically establish the movant's legal entitlement to judgment. See Fed. R. Civ. P. 56(a), (e); John v. Louisiana Board of Trustees for State Colleges & Universities, 757 F.2d 698, 708–10 (5th Cir. 1985); Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).

The district court considered Sills's additional filings but deemed the Secretary's statement of facts admitted because he had not supplied the required response. ROA.3555–3556. His June 23 opposition identified CFO and HR control, challenged reliance on his BCBSLA check, and argued that Nationwide's control of receivables prevented payment. ROA.3343–3347. These issues were raised below. The opposition did not supply the required paragraph-by-paragraph response, and its broad exhibit descriptions do not replace specific citations. Sills's

appellate contention is that the materials properly considered must establish the statutory elements without resolving an otherwise open conflict in sworn testimony.

The discovery responses also require a precise distinction. The October 4, 2024 order acknowledged that Sills had filed April responses, found them incomplete and unserved, and directed complete responses within 30 days. ROA.356–360. Sills subsequently filed responses under his own name containing substantive denials concerning control, nonpayment, Nationwide's role, and the claimed losses. ROA.2378–2384. Those filings support his position that he attempted to answer the allegations against him; they should not be described as an absence of any response.

The filed responses reproduce the company's 25 requests; the individual set contains 24. The overlap is concrete. Individual Request 14 and filed Request 15 concern the same $78,119.85 check; Sills's answer acknowledges the check and says it was sent at Blue Cross's request to pay all claims. ROA.2361, 2381. Individual Request 16 and filed Request 17 concern the same alleged unpaid-claims total, which the answer disputes as inaccurate. ROA.2362, 2381–2382. Individual Request 19 and filed Request 20 address failure to remit contributions and resulting nonpayment; that answer expressly denies that Sills decided which bills to process and pay. ROA.2362, 2382.

The carrier allegations in individual Requests 11–13 likewise correspond to filed Requests 12–14, whose answers dispute responsibility and identify Nationwide's control of receivables. ROA.2361, 2380–2381. These are responses to allegations directed at Sills and the company together. Rule 36(a)(4) requires a denial to address the substance fairly. Sills asks the Court to examine that substance. The comparison does not establish timely service or adequate answers to every individual request: individual Requests 6–10 ask distinct questions about Sills's own authority. ROA.2360–2361. Those questions require separate treatment; neither a blanket assertion that nothing was answered nor an assertion that both sets were identical accurately describes the filings.

Rule 36 admissions, if effective, are distinct from facts deemed admitted under Local Rule 56. They are conclusive unless withdrawal or amendment is permitted; contrary testimony alone does not overcome them. Fed. R. Civ. P. 36(b); In re Carney, 258 F.3d 415, 418–20 (5th Cir. 2001). Sills does not assert that filing amended responses automatically withdrew admissions. Any reliance on Rule 36 must account for the particular request, the response addressing it, and the October order directing fuller answers. His evidentiary-conflict argument applies to matters remaining open after that analysis.

The conflicting accounts are specific. Giambrone described Sills as the ultimate decision-maker concerning bills and attributed the nonpayment decisions

to him. ROA.2342–2343. In the deposition submitted with the motion, Sills denied directing Giambrone's financial management, denied deciding not to pay the health-care invoices, and identified Devon Overall and Giambrone as deciding which bills to pay. ROA.2272. He also denied knowing how to stop employee deductions and described Giambrone as handling payroll funding. ROA.2273. To the extent these passages were properly before the court for the challenged findings, their evidentiary value cannot be rejected merely as self-serving. Particularized testimony about one's own actions may be competent under Guzman, 18 F.4th at 160–61.

Liedtke's prohibition against weighing competing evidence applies when a genuine evidentiary conflict is properly presented. No. 25-50717, slip op. at 8. Sills does not contend that it displaces local procedural rules. He challenges the conclusion that there was no admissible contrary evidence, ROA.3559, insofar as that conclusion rejects his firsthand testimony on its merits. If this Court sustains the procedural treatment of particular facts, it must still determine whether those facts establish the statutory elements and the entire award as a matter of law.

Accordingly, Sills requests review of both the legal sufficiency of the Secretary's showing and the asserted factual conflicts within the materials properly considered. A factfinder may ultimately credit Giambrone. Where a material

conflict remains open under the applicable procedural rules, however, that choice calls for further proceedings rather than summary judgment.

## II. THE PLAN-ASSETS PRONG REQUIRES ACTUAL AUTHORITY OR CONTROL, AND THE SECRETARY'S EVIDENCE DOES NOT ELIMINATE THE FACTUAL DISPUTE OVER WHO EXERCISED IT

ERISA's plan-assets prong does not require discretionary authority or control. 29 U.S.C. § 1002(21)(A)(i); Appellee Br. 21–22. It requires actual exercise of authority or control over the relevant assets. The issue is whether the properly considered evidence establishes that Sills performed the functions underlying the alleged breaches.

ERISA makes a person a fiduciary only "to the extent" the statutory function is performed. 29 U.S.C. § 1002(21)(A). Pegram v. Herdrich therefore asks whether the defendant was acting as a fiduciary when taking the action complained of. 530 U.S. 211, 225–26 (2000). This Court likewise treats fiduciary status as functional and context-specific. D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Insurance Co., 88 F.4th 602, 608 (5th Cir. 2023); Tiblier v. Dlabal, 743 F.3d 1004, 1008–09 (5th Cir. 2014).

The Secretary identifies ownership, check-signing power, the ability to hire or fire personnel, and Sills's acknowledgment that he could direct the CFO concerning company funds. Appellee Br. 23–26; ROA.2286, 2334. Delegation

alone does not eliminate fiduciary responsibility. But the ASA's designation must be read accurately: it identifies Coastal Bridge Company, LLC as PLAN SPONSOR and designates that sponsor as the administrator and named fiduciary. ROA.2487, 2495 § 3.11. The ASA was signed for Coastal by HR Director Kelly Hernandez/Smith. ROA.2534. Those provisions establish the company's contractual role; Sills's individual status must still be determined under ERISA's functional test. His specific denials concerning the challenged nonpayment and payroll decisions, ROA.2272–2273, must be evaluated alongside Giambrone's contrary account, ROA.2342–2343, subject to Section I.

The Secretary also relies on Sills's May 2020 signature on the $78,119.85 BCBSLA check and later communications asking how claims would be paid. Appellee Br. 25–26. Those facts show that Sills became involved in attempting to address the problem after it surfaced. They do not necessarily prove that he exercised actual control over the earlier payroll and claim-processing decisions that generated the alleged losses. A post-problem effort to pay a carrier is not, by itself, proof that the same person personally controlled every earlier plan-asset transaction.

LoPresti v. Terwilliger provides a close factual comparison. The Second Circuit held one company owner to be a fiduciary because he selected creditors for payment from an account containing withheld contributions. It upheld dismissal of

the ERISA claims against the other owner, who had check-signing authority and general knowledge of deductions but no responsibility for selecting creditors. 126 F.3d 34, 40–41 (2d Cir. 1997). This persuasive authority, cited below at ROA.3344, illustrates why ownership and signing authority do not end the functional inquiry. It also shows why merely following a finance officer's advice does not excuse an owner who actually participates in payment decisions. Sills's sworn denial that he made those decisions, ROA.2272–2273, concerns the distinction LoPresti found decisive. The Secretary's contrary evidence must be assessed under the governing summary-judgment and admissions rules.

Sills maintains that he neither accepted a fiduciary appointment nor performed the fiduciary functions underlying the Secretary's claims. His defense rests on the statutory functions and his cited testimony, not on the absence of a formal acceptance alone: ERISA can impose fiduciary status based on conduct or discretionary administrative responsibility. 29 U.S.C. § 1002(21)(A). If the record establishes as a matter of law that Sills lacked fiduciary status for the challenged conduct, the Court should reverse and render judgment in his favor on the fiduciary-breach claims against him. If deciding that issue requires resolving the conflicting testimony, the Court should instead remand. Nationwide's role supplies relevant control and causation evidence, but potential responsibility of another actor cannot substitute for this analysis of Sills's own statutory status.

## III. THE DAMAGES DISPUTE CONCERNS VALIDITY OF THE CLAIM SCHEDULE—NOT ARITHMETIC

The Secretary calculates $209,466.34 by adding $172,351.35 in denied BCBSLA claims, $19,618.23 in BCBSLA employee contributions, $9,736.59 in Ameritas contributions, and $7,760.17 in Guardian contributions. Appellee Br. 27–28. The disputed question is the validity of the largest component—the $172,351.35 claim schedule—and the treatment of payments toward the same losses.

The schedule at ROA.388–389 is labeled "Denied Claims by Participant" and "Amount Charged." Webb's declaration states that $172,351.35 remained unpaid and identifies cancellation and noncoverage codes in the underlying carrier spreadsheet. ROA.2625. Thus, the Secretary offered more than a bare total. Sills's objection is that this evidence must be considered with his specific evidence of payments and the proper measure of recoverable loss; the schedule's heading alone does not defeat the declaration.

At his deposition, Sills identified the marked schedule and disputed the highlighted entries. He testified that he personally paid Michael Guidry approximately $10,000 and had resolved Sean Maher's matter through an arrangement involving equipment and labor. He also described contacting other participants about whether they still owed bills. ROA.2283–2284. The testimony

about his own payments is the strongest firsthand evidence. Reports of participants' statements require a permissible evidentiary basis and cannot all be treated as equivalent proof of payment.

Sills acknowledged that he did not then have receipts, canceled checks, or participant affidavits available. ROA.2284. That admission matters, but the Secretary's statement that he had "no evidence" of payments, Appellee Br. 28, does not account for his testimony about payments he says he personally made. Whether that testimony is sufficiently specific, properly presented, and connected to the same loss is the relevant inquiry.

ERISA § 409(a) ties monetary relief to loss resulting from breach. 29 U.S.C. § 1109(a); Perez v. Bruister, 823 F.3d 250, 263 (5th Cir. 2016). A proved payment satisfying the same obligation must be reconciled with the amount sought. The $10,059.88 Guidry row is not identical to the approximately $10,000 payment described in the deposition; the testimony therefore does not establish a full credit for that row. ROA.388, 2283. Maher's asserted settlement likewise requires proof of its value and connection to the claimed loss. A participant's later statement that no bill remains does not, by itself, establish that no compensable loss occurred.

The table below preserves the magnitude of Sills's marked dispute without presenting all markings as proved deductions. Recomputing the 21 marked rows from the printed amounts at ROA.388–389 yields $109,785.37. If every marked

amount were established as an appropriate exclusion or credit, the arithmetic would be:

| **Record calculation** | **Amount** |
|---|---|
| Secretary's denied-claims schedule | $172,351.35 |
| Less marked rows, only if proved excludable | ($109,785.37) |
| Denied-claims balance if those disputed rows are excluded | $62,565.98 |
| Other three contribution categories asserted by Secretary | $37,114.99 |
| Illustrative principal if highlighted disputed claims are excluded | $99,680.97 |

The table shows the effect of the disputed entries if established as proper credits; the markings alone do not prove them. The supporting evidence must be examined claim by claim, beginning with Sills's firsthand payment testimony. He seeks credit for payments proved to satisfy the same loss and a determination that avoids recovering that loss twice.

Sills's June opposition disputed proof of unpaid claims, and his later objection to the proposed judgment challenged denied-claim validity and causation and requested a hearing. ROA.3345, 3582–3585. These filings identify the damages issue raised below. Whether particular evidence was sufficiently presented remains governed by Section I; the later objection did not itself supply receipts or a complete reconciliation.

The $78,119.85 payment presents two distinct questions: what it reimbursed and what effect satisfying the carrier's demand had on further claims processing. Leake's declaration states that the payment reimbursed claims BCBSLA had already processed and paid and did not fund unprocessed or run-out claims. ROA.2715 ¶¶ 3–4; Appellee Br. 28–29. The May 4, 2020 check and remittance identify medical and prescription components of $50,216.16 and $27,903.69. ROA.2726. The bank image bears a May 5 receipt stamp. ROA.2754. These records do not establish an automatic $78,119.85 offset against the later $172,351.35 schedule. The payment's allocation, however, does not resolve the separate issue of the carrier's subsequent processing decisions or the independently disputed Guidry and Maher payments.

BCBSLA's February 28, 2020 demand expressly stated: "Upon receipt of payment in full from Coastal Bridge, BCBSLA will resume paying claims under the terms of the Agreement." ROA.2752. The same letter identified $78,119.85 in medical and prescription claims, the exact amount Coastal later paid. This written statement corroborates Sills's deposition explanation that he understood payment would allow BCBSLA to finish processing the claims; he testified, "That's why we sent the money." ROA.2264 (R. Doc. 78-4 at 15, deposition p. 54:1–17). His explanation therefore has documentary support beyond his own characterization of the transaction.

The statement must also be read with its conditions. The letter separately demanded $12,355.23 in administrative fees and said BCBSLA would not service claims received after December 27, 2019 without a signed run-out agreement. ROA.2752–2753. ASA §§ 5.05 and 6.01 conditioned resumption on payment of the sums due, and §§ 4.01(e)(4) and 4.03(c) addressed the written agreement required for run-out services, subject to the ITS-claim provisions. ROA.2499, 2511, 2513–2514. The letter supports Sills's stated purpose for paying; it does not establish unconditional acceptance of every outstanding claim.

The deposit issue was raised contemporaneously. In his May 11, 2020 email to BCBSLA's counsel, Sills reported the payment and wrote, "Additionally we had a deposit not sure how that was posted or accounted for," observing that the demand letter did not mention it. ROA.2415. He confirmed that email in his deposition. ROA.2275 (deposition p. 101:1–17). The cited materials do not identify the deposit's amount or establish its final application to administrative fees or claims. They do establish that Sills asked BCBSLA to account for a deposit after the payment. The Secretary expressly excludes the $12,355.23 administrative balance from the damages calculation because it was owed to BCBSLA rather than the Plan. Appellee Br. 28 n.6. The relevant inquiry is the application of available funds and its effect on claim processing and remaining participant losses, not a new subtraction of administrative fees from the award.

BCBSLA's later communications identify a separate run-out issue. On May 12, its account manager said BCBSLA had not been contracted to process run-out claims but was available to discuss doing so. ROA.2414. Sills asked whether an employee's claim had been or would be paid and said he had thought Giambrone had contacted BCBSLA. ROA.2417. The July 23, 2020 letter then acknowledged receipt on July 8 of a PDF run-out agreement sent by lisa@coastalbridge.com, signed by Sills, and bearing a January 22, 2020 date. ROA.2558. BCBSLA asserted that this was its first receipt, rejected the form as backdated, and cited claims-funding history. ROA.2559. Sills denied signing it in July and backdating it, but acknowledged that he lacked evidence then establishing an earlier transmission. ROA.2265–2266 (deposition pp. 58–62). The handwritten date alone does not prove January delivery.

The asserted deadline also must be identified accurately. Lewis's declaration describes execution and return within thirty days of receipt by the insured group; the attached rejection letter describes signing within thirty days after termination of the ASA. Compare ROA.2556 ¶ 3(f), with ROA.2559. BCBSLA's May 12 willingness to discuss run-out services is also part of that chronology. ROA.2414. Neither the differing formulations nor that willingness establishes a binding extension or timely acceptance. They require separating the asserted deadline,

signing and transmission dates, and funding conditions when evaluating the carrier's refusal and its relationship to the claimed losses.

The ASA assigned BCBSLA responsibility for processing claims in accordance with ERISA claims regulations and required ordinary care and due diligence in performing its duties. ROA.2496, 2524 § 8.03. Those provisions do not transfer Coastal's funding obligations or establish misconduct by BCBSLA. They reinforce why the actual processing history matters. Sills's position is that liability for the remaining loss must be tied to his own fiduciary conduct after accounting for the properly presented evidence concerning payments, the deposit inquiry, run-out arrangements, and the carrier's response. The Court need not decide a new claim against BCBSLA to evaluate the sufficiency of the Secretary's causation and damages showing. Nor need it assume that previously paid claims were reversed.

The damages challenge supplies an alternative ground for relief even if the Court sustains fiduciary status and breach. To the extent the preserved evidence presents a genuine dispute over a claimed loss or payment satisfying it, the Court should vacate the monetary award and remand to determine which claims remained unpaid, what recoverable loss resulted from Sills's fiduciary conduct, and what credits apply. That relief does not require accepting every highlighted entry or

transferring liability to Nationwide. Interest should then be recalculated on the properly determined principal.

## IV. THE DOTD AND SURETY RECORDS BEAR ON CONTROL AND CAUSATION, NOT AUTOMATIC TRANSFER OF ERISA LIABILITY

The Secretary argues that Nationwide's agreements did not assume the Plan's obligations and that financial distress does not excuse a fiduciary's diversion of employee contributions. Appellee Br. 29-32. Sills does not seek reversal merely because a surety received corporate revenues. His narrower response concerns the actual exercise of authority over the relevant funds and the causal basis for the later losses. The specification, contemporaneous surety correspondence, and testimony supply context for those disputed questions; they are not an independent basis to impose judgment on Nationwide in this appeal.

### A. Nationwide expressly directed contract funds to itself for payment of project creditors.

Nationwide's December 17, 2019 letter stated that it had exercised its attorney-in-fact and assignment rights, including rights to contract balances and claims for extra work and delay. It directed future contract payments to Nationwide, which would hold the funds "in trust to be paid to project creditors." ROA.3465 (R. Doc. 92-5 at 1). That contemporaneous statement is more specific

than the bare existence of an indemnity agreement: Nationwide itself described an exercised right over the source and destination of project funds.

The Consent and Release Agreement is consistent with that limited point. Paragraphs 2 and 3 address takeover options and access to project, financial, and banking records; paragraph 8 confirms assignment of contract rights and monies due under bonded and completed contracts. ROA.2936, 2938. Paragraph 12 requires Coastal Bridge to forward written project-payment claims to Nationwide. ROA.2939. That is a claim-notification requirement, not a promise to pay every medical claim. Sills relies on these provisions to explain the project's funding and claims-payment arrangements, not to erase his own obligations if a fiduciary breach is proved.

**B. Section 109.04 recognizes qualifying benefit costs, subject to important conditions.**

The 2006 Louisiana DOTD specification was filed below as R. Doc. 60-3. ROA.479-481. Section 109.04 governs compensation for contract alterations through unit prices, negotiated prices, or force-account work. Its force-account subsection, 109.04(3)(a), includes actual costs paid to or on behalf of workers for health-and-welfare benefits when required by an applicable collective-bargaining agreement or other employment contract. ROA.480-481. Thus, qualifying employee benefits can be direct labor costs of highway work; they are not

categorically unrelated to project economics merely because they also involve a health plan.

This connection was explored in the Secretary's own deposition exhibit. Sills identified the specification, read its benefit-cost language, and testified from his contracting experience that he had submitted such items to the highway department for payment. ROA.2285 (deposition pp. 138:12-139:24). Planning notes attached to a November 13, 2019 financing email also identify I-10/I-12 patching force-account work as a prospective source of improved project cash flow. ROA.3467-3469. The same patching project appears among the bonded contracts in the Consent and Release Agreement. ROA.2933. These notes are a projection, not proof that DOTD approved or paid a particular benefit reimbursement.

Sills does not equate reimbursement eligibility with a transfer of ERISA liability. Section 109.04(3)(a) concerns qualifying costs actually paid and documented under its conditions. It does not establish that the entire denied-claims schedule was chargeable to a specific project, that DOTD paid those particular amounts to Nationwide, or that Nationwide assumed every Plan obligation. Nor does it transform ordinary corporate receivables into employee-contribution assets. The narrower relevance is to the funding arrangements underlying Sills's position that loss of access to project proceeds affected payment of outstanding obligations.

Whether that position defeats any claimed loss must be resolved through the evidence, not presumed from the specification alone.

**C. Bannistor forecloses an insolvency excuse, but does not eliminate the factual inquiry.**

Bannistor v. Ullman, 287 F.3d 394, 401-04 (5th Cir. 2002), cited at Appellee Br. 32, must be confronted directly. It rejects the proposition that insolvency, an assignment of receivables, or a lender's control automatically absolves an existing fiduciary. The majority relied on trial findings that the defendants exercised control over withheld contributions and paid other obligations instead of the plans. It also explained that possible fiduciary responsibility of the lender would not negate the defendants' own responsibility. Sills cannot avoid liability merely by attributing the company's cash shortage to Nationwide.

But Bannistor resolved disputed funding and control evidence after trial, reviewing factual findings for clear error. Id. at 401-04. Here the question is whether summary judgment was proper notwithstanding competing sworn accounts of who made the challenged payment decisions. ROA.2272-2274, 2342-2343. The distinction is not simply trial versus summary judgment: it is whether the facts establishing personal control and causally connected loss were genuinely undisputed. Bannistor supplies the governing limits; it does not authorize choosing one witness's account over another to establish those facts.

**D. Diversion of receivables bears on the ability to pay outstanding bills.**

The chronology is not limited to the January 2020 Consent and Release Agreement. Sills testified that Nationwide entered a joint-venture funding arrangement with Coastal in June 2019. ROA.2280 (R. Doc. 78-4 at 31, deposition p. 118:1–5). Coastal's December 26 correspondence identifies a December 16 notice from Nationwide to DOTD, sent during ongoing negotiations and learned of by Coastal after DOTD received it. ROA.392–393 (R. Doc. 57 at 13–14). Nationwide's December 17 letter expressly directed further contract payments to itself. ROA.3465. The financing relationship, notice to DOTD, and later formal agreement are distinct events.

The February 9, 2020 email supplies contemporaneous support for the receivables explanation later raised in the June opposition. ROA.3346–3347. In that email, copied to CFO Michael Giambrone, Sills stated that Nationwide had taken Coastal's October, November, and December receivables. ROA.2393. Read with Nationwide's own direction of contract payments, ROA.3465, it supports examination of how the loss of access to those funds affected later payment opportunities. The email does not establish a particular balance available for insurance bills or a scheduled payment by Giambrone.

The carrier evidence also limits the chronology argument. Ameritas states that coverage terminated effective August 31, 2019 at the employer's request, and

Guardian states that November and December premiums were unpaid and coverage terminated effective November 3. ROA.2621, 2623. Sills therefore does not assert that the December diversion caused those earlier termination dates or that neither bill was overdue. His narrower contention is that the contemporaneously reported loss of receivables bears on later ability to pay outstanding obligations. It must be assessed with the evidence of earlier withholding, actual control, and whether a later payment could have prevented the particular loss; it supplies no automatic offset or transfer of ERISA liability.

## V. THE PERMANENT INJUNCTION SHOULD FALL WITH THE LIABILITY JUDGMENT

The Secretary argues that the permanent injunction is justified by the seriousness and magnitude of the violations it says were established. Appellee Br. 32–33. But the injunction depends on the underlying findings that Sills was a fiduciary for the challenged conduct and committed the alleged breaches. If this Court vacates the summary judgment because those questions require factfinding, the injunction cannot remain anchored to findings that no longer stand.

The injunction is broad: it permanently bars Sills from acting as a fiduciary to any ERISA-covered employee benefit plan. ROA.3590. On a remand for trial concerning actual fiduciary control, causation, and damages, the equitable remedy should likewise be vacated for reconsideration on the properly determined facts.

## VI. RULE 56(d) AND RULE 59(e) REINFORCE, BUT ARE NOT NECESSARY TO, REMAND

The Secretary correctly notes that Sills's Rule 56(d) request lacked the prescribed affidavit or declaration and that the district court found insufficient diligence. Appellee Br. 33–35; ROA.3556. Those are substantial obstacles to a discovery-based reversal. The existing-record arguments above remain distinct: if properly presented evidence creates a material dispute or the admitted facts do not establish legal entitlement to the judgment entered, reversal does not depend on obtaining new discovery.

The record does show requests for further discovery, including a June 30 filing invoking Rule 56(d) and the December 16 request concerning third-party financial and carrier records. ROA.3349–3351, 3541–3545. The December status order deferred discovery disputes pending summary judgment and contemplated an expedited schedule if summary judgment were denied. ROA.3540. That conditional order did not grant a Rule 56(d) continuance. If the judgment is vacated on the preserved merits issues, focused discovery into the particular control and payment disputes would be appropriate for consideration on remand.

The Rule 59(e) denial does not necessarily receive a more deferential standard than the underlying judgment. Bruckner Truck Sales, Inc. v. Guzman applies de novo review when the motion asks only for reconsideration of summary

judgment on the merits. No. 24-10377, slip op. at 2 (5th Cir. Aug. 6, 2025). Sills's motion challenged the treatment of the existing record, disputed personal control and causation, and requested vacatur and further proceedings. ROA.3591–3593. To the extent that motion sought reconsideration of the Rule 56 merits, Bruckner supports de novo review of its denial as well. This does not excuse an earlier failure to preserve an issue or identify evidence. Independently, the underlying summary judgment remains subject to de novo review.

## CONCLUSION

The properly considered record must establish both Sills's individual fiduciary responsibility and the loss resulting from the challenged conduct. His specific sworn denials, firsthand payment testimony, and the contemporaneous carrier and receivables records support the disputes identified above. BCBSLA's demand, the matching payment, and Sills's contemporaneous deposit inquiry further support examining the actual accounting and processing history. The requested relief is reversal where the record establishes Sills's entitlement to judgment, or vacatur and remand where material disputes remain, with damages limited to proved recoverable losses.

Defendant-Appellant Kelly C. Sills respectfully requests reversal of the judgment against him and vacatur of the monetary award, associated interest, and permanent injunction as to him. If the record establishes his entitlement to

judgment as a matter of law on individual fiduciary status, he requests rendition of judgment dismissing the Secretary's fiduciary-breach claims against him with prejudice. Alternatively, he requests remand for trial or further proceedings on individual fiduciary status, breach, causation, and loss. At minimum, he requests vacatur of the damages award against him and remand to determine valid loss and the proper amount of the judgment, with corresponding recalculation of interest.

Respectfully submitted,

Kelly C. Sills September 16, 2026
Pro Se Defendant-Appellant
6080 Chandler Drive
Baton Rouge, Louisiana 70808
Telephone: 225-766-0244
Email: sillsk@coastalbridge.com

**CERTIFICATE OF SERVICE**

I certify that on September 16, 2026, I submitted the original of this Reply Brief by hand delivery to the Clerk of the United States Court of Appeals for the Fifth Circuit for filing and electronic service through the Court's CM/ECF system on: (1) Emma L. Goold, U.S. Department of Labor, goold.emma.l@dol.gov; and (2) Davis Rhorer, Jr., Assistant United States Attorney, davis.rhorer@usdoj.gov. Service will be completed by transmission of the Court's Notice of Docket Activity with access to the filed brief.

______________________________

Kelly C. Sills
6040 Chandler Dr.
B.R., LA 70808
225-766-0244

**CERTIFICATE OF COMPLIANCE**

This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 5,027 words, excluding the parts exempted by Rule 32(f). It complies with the typeface and type-style requirements of Rules 32(a)(5) and 32(a)(6) because it uses 14-point Times New Roman, a proportionally spaced typeface.

Kelly C. Sills September 16, 2026